UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| AMY HECHT,<br><br>        Plaintiff,<br><br>v.<br><br>SUMMERLIN LIFE AND HEALTH INSURANCE COMPANY, a Nevada corporation; THE SAPPHIRE CLUB GROUP HEALTH & DENTAL PLAN,<br><br>        Defendants.<br><br>AND ALL RELATED ACTIONS. | 2:07-CV-01200-PMP-LRL<br><br><u>ORDER</u> |

        Presently before the Court is Third Party Defendant CHSI of Nevada's Motion to Dismiss Third Party Complaint (Doc. #13), filed on October 18, 2007.  Third Party Plaintiff Summerlin Life and Health Insurance Company filed an Opposition (Doc. #16) on November 19, 2007.  Third Party Defendant CHSI of Nevada filed a Reply (Doc. #20) on December 19, 2007.

**I. BACKGROUND**

        In September 2004, Plaintiff Amy Hecht ("Hecht") was involved in a car accident in which she suffered disabling injuries.  (Am. Compl. [Doc. #22] at 2.)  At the time of the accident, Hecht was employed by Defendant SHAC LLC, doing business as Sapphire Gentlemen's Club ("Sapphire Club"), and was insured under her employer's employee benefit plan, the Sapphire Gentlemen's Club Group Medical Plan ("the Plan").  (<u>Id.</u>)

Defendant Summerlin Life and Health Insurance Company ("Summerlin Life") is the Plan's underwriter. (Id. at 1.) The Sapphire Club subsequently terminated Hecht's employment when she was unable to return to work due to her injuries. (Id. at 3.) According to the Amended Complaint, both Sapphire Club and Summerlin Life legally were required to advise Hecht of her right to continue her health insurance benefits under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") and Nevada Revised Statute § 689B.200. (Id.)

        Hecht alleges she heard nothing from Summerlin Life, but the Sapphire Club provided her COBRA enrollment material. (Id.) On November 10, 2004, Hecht sent the Sapphire Club the appropriate enrollment forms and paid individual premiums to continue her insurance coverage. (Id.) Hecht alleges that Defendant Summerlin Life thereafter failed to pay Hecht's medical bills and did not assist Hecht when she called to inquire about the failure to pay her medical bills. (Id.) On April 26, 2005, the Sapphire Club mailed to Plaintiff's father a premium refund check. (Id.)

        Hecht filed suit in Nevada state court on August 9, 2007 against Summerlin Life and the Sapphire Club Group Health & Dental Plan, asserting claims for declaratory relief, breach of an employee benefit plan under the Employee Retirement Income Security Act ("ERISA"), breach of contract, breach of the duty of good faith and fair dealing, breach of Nevada statutory duties, and requesting injunctive relief. Defendant Summerlin Life removed the action to this Court on September 5, 2007. (Notice of Removal.) Hecht since has filed an Amended Complaint substituting the originally named defendant the Sapphire Club Group Health & Dental Plan for Defendant SHAC, LLC. (Am. Compl.)

        On September 12, 2007, Defendant Summerlin Life cross-claimed against the Sapphire Club and brought a third party complaint against Third Party Defendant CHSI of Nevada ("CHSI"). (Answer, Cross-Claim & Third Party Compl. [Doc. #6].) According to Summerlin Life, the Sapphire Club and its agent, CHSI, did not timely inform Summerlin

Life of Hecht's election to continue coverage. (Id. at 8.) Summerlin Life contends CHSI informed Summerlin Life to terminate Hecht's benefits as of October 1, 2004 due to the termination of her employment. (Id.) On April 1, 2005, CHSI provided Summerlin Life with Hecht's COBRA election form. (Id.) Summerlin Life contends that because the Sapphire Club, through its agent CHSI, informed Summerlin Life to terminate Hecht's benefits, and did not timely provide Summerlin Life with Hecht's election form, Summerlin Life denied Hecht's COBRA election as untimely. (Id.) Summerlin Life seeks indemnification and contribution from both the Sapphire Club and CHSI to the extent Summerlin Life is liable to Hecht. (Id. at 8-9, 11.)

Third Party Defendant CHSI moves to dismiss the Third Party Complaint, arguing it did not owe a duty under ERISA to notify Summerlin Life of Hecht's election to continue coverage because only employees, employers, beneficiaries, group health plans, administrators, and sponsors have notification responsibilities, and CHSI falls within none of these categories. Additionally, CHSI argues Summerlin Life lacks standing to bring a claim under ERISA because Summerlin Life is not a participant, beneficiary, or fiduciary entitled to bring suit under 29 U.S.C. § 1132(a)(3). Finally, CHSI argues the Third Party Complaint is not ripe because unless and until Summerlin Life is found liable to Hecht, its contribution and indemnity claims are based only on a possibility of future liability.

Summerlin Life responds that CHSI identified itself as the Sapphire Club's Health and Benefits Manager, and signed and completed the employer portion of Hecht's COBRA form electing to continue benefits. Summerlin Life therefore argues its allegations that CHSI was the Sapphire Club's Health and Benefits Manager and agent, which the Court must accept as true, demonstrates CHSI had a duty as either the employer's agent or the administrator to notify Summerlin Life of Hecht's election to continue benefits. Alternatively, Summerlin Life argues the Sapphire Club may have delegated its fiduciary duties to CHSI, a matter which discovery will clarify. Summerlin Life also argues it has

3

standing to bring a claim under ERISA because it is a fiduciary that exercised actual authority in denying Hecht's claim. Finally, Summerlin Life argues its claims are ripe because Federal Rule of Civil Procedure 14(a) specifically contemplates the joinder of third party defendants for the purpose of determining contribution and indemnity claims related to the underlying complaint.

**II. MOTION TO DISMISS**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). There is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). The issue is not whether the plaintiff ultimately will prevail, but whether she may offer evidence in support of her claims. See id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. Bell Atlantic Corp. v Twombly, 127 S. Ct. 1955, 1965 (2007). Such allegations must amount to "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Id. at 1964-65.

**A. Ripeness**

"[R]ipeness is 'peculiarly a question of timing' . . . designed to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (quoting Regional Rail Reorg. Act Cases, 419 U.S. 102, 140 (1974) & Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)). The ripeness doctrine contains both a

constitutional component derived from Article III limitations on judicial power and a prudential component. Id. The constitutional component of ripeness is similar to the first element of the standing inquiry, and requires a showing of a "concrete impact upon the parties arising from the dispute." Buono v. Kempthorne, 502 F.3d 1069, 1077 (9th Cir. 2007).

Even if a claim is ripe under the constitutional component of the ripeness doctrine, courts may refuse to exercise jurisdiction for prudential reasons. Id. at 1079. Under the jurisprudential ripeness inquiry, the Court considers "(a) the hardship that the party seeking relief will suffer from withholding judicial action, and (b) the fitness of the issues in the record for judicial review." Id.

Generally, a matter is not ripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Scott v. Pasadena Unified Sch. Dist., 306 F.3d 646, 662 (9th Cir. 2002) (quotations omitted). Consequently, courts often find claims for indemnification or contribution are not ripe because the claims are contingent on a finding of liability on the underlying claim. See, e.g., Lincoln House, Inc. v. Dupre, 903 F.2d 845, 847 (1st Cir. 1990); McRory v. Hobart Bros. Co., Inc., 732 F.2d 1533, 1535 (11th Cir. 1984); RLI Ins. Co. v. John H. Hampshire, Inc., 461 F. Supp. 2d 364, 369 (D. Md. 2006); Urological Surgery Prof'l Ass'n v. Fecteau Benefits Group, Inc., 359 F. Supp. 2d 24, 25-26 (D.N.H. 2005). These cases, however, dealt with situations where the action to determine liability on the underlying claim and the indemnification or contribution claim were brought in separate actions. See Lincoln House, Inc., 903 F.2d at 847 (liability action in state court, indemnity action in federal court); McRory, 732 F.2d at 1535 (same); RLI Ins. Co., 461 F. Supp. 2d at 369 (liability action not yet initiated in any court); Urological Surgery Prof'l Ass'n, 359 F. Supp. 2d at 25-26 (liability action in separate suit in same court).

///

Federal Rule of Civil Procedure 14(a) permits a defendant to file a third party complaint against a nonparty "who is or may be liable to [the defendant] for all or part of the claim against [the defendant]." Rule 14(a)'s purpose is "to permit additional parties whose rights may be affected by the decision in the original action to be joined and brought in so as to expedite the final determination of the rights and liabilities of all of the interested persons in one suit." Glens Falls Indem. Co. v. Atlantic Bldg. Corp., 199 F.2d 60, 63 (4th Cir. 1952). Several United States Circuit Courts of Appeal, including the Ninth Circuit, have indicated Rule 14(a) permits a defendant to pursue contribution and indemnity claims "even though the defendant's claim is purely inchoate–i.e., has not yet accrued under the governing substantive law–so long as the third-party defendant may become liable for all or part of the plaintiff's judgment." Andrulonis v. United States, 26 F.3d 1224, 1233 (2d Cir. 1994); Green v. U.S. Dep't of Labor, 775 F.2d 964, 971 n.7 (8th Cir. 1985); Williams v. Ford Motor Credit Co., 627 F.2d 158, 160 (8th Cir. 1980); St. Paul Fire & Marine Ins Co v. U.S. Lines Co., 258 F.2d 374, 376 (2d Cir. 1958); Mid-States Ins. Co. v. American Fid. & Cas. Co., 234 F.2d 721, 731-32 (9th Cir. 1956); Atlantic Bldg. Corp., 199 F.2d at 63.

Although these courts state that Rule 14(a) permits a defendant to bring an inchoate claim for contribution, indemnity, or subrogation, none examine whether this is contrary to Article III jurisdictional limits on federal courts with respect to contingent, i.e., unripe, claims. That Rule 14 permits it does not answer the question, because "it is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 370 (1978).

The Court concludes Summerlin Life's third party claims for indemnification and contribution brought through the procedural device of Rule 14(a) are ripe. Although contingent on a finding that Summerlin Life is liable to Hecht, Summerlin Life's contribution and indemnification claims are sufficiently concrete to support a finding of ripeness. Through third party practice under Rule 14(a), Summerlin Life avoids having to

6

re-litigate in another court the issues heard and adjudged in the action between itself and Hecht, may protect itself from potentially inconsistent verdicts, and enables the parties to settle all related claims in a single suit. The costs and pitfalls associated with litigating multiple suits on the same subject matter, and the attendant possibility of inconsistent verdicts, are not insubstantial or abstract. Rule 14(a) is, in effect, a recognition that where procedurally it is possible to bring all related liability and indemnity or contribution claims in a single action, the interests involved are sufficiently concrete to permit accelerated adjudication of the inchoate claims.

For these same reasons, Summerlin Life will suffer hardship if it is not permitted to use Rule 14(a)'s procedural device to accelerate its claims. Factual development may be required to make the indemnification and contribution issues fit for judicial review. However, Rule 14(a) permits the Court and parties to resolve those issues in one litigation in which all parties participate. In those cases where courts have found contribution and indemnity claims were not ripe, because the underlying claims either were instituted in different suits or had not been initiated at all, the party seeking indemnification or contribution would not have been able to resort to Rule 14(a) to avoid the harms associated with duplicative suits.

Summerlin Life's third party claims against CHSI are ripe. The Court therefore will deny CHSI's motion to dismiss on this basis.

**B. Statutory Standing**

Summerlin Life brings suit against CHSI pursuant to 29 U.S.C. § 1132(a)(3). By the statute's plain language, suits under § 1132(a)(3) may be brought only by a participant, beneficiary, or fiduciary. Summerlin Life agrees it is not a participant or beneficiary under the Plan. Consequently, to state a cause of action under § 1132(a)(3), Summerlin Life must show it is an ERISA fiduciary.

///

> A person is an ERISA fiduciary with respect to a plan–
>
> to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "ERISA's definition of 'fiduciary' is functional rather than formal." Parker v. Bain, 68 F.3d 1131, 1139 (9th Cir. 1995). A person's actions determine whether he is a fiduciary, even if the plan documents do not assign fiduciary duties to the person. Id. at 1140 ("Thus, if Parker in fact exercised any discretionary authority over Plan assets, then he was a fiduciary, regardless whether the Plan itself named him as such."); Acosta v. Pacific Enters., 950 F.2d 611, 617-18 (9th Cir. 1991) (stating the statutory language "makes clear that a person's actions, not the official designation of his role, determine whether he enjoys fiduciary status."). A person with the authority to grant or deny claims, or to review the denial of claims, for benefits under the relevant ERISA plan is a fiduciary. Aetna Life Ins. Co. v. Bayona, 223 F.3d 1030, 1033 (9th Cir. 2000); Pacificare Inc. v. Martin, 34 F.3d 834, 837 (9th Cir. 1994); Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Acc. Ins. Co., 809 F.2d 617, 625-26 (9th Cir. 1987).

The party invoking the Court's jurisdiction bears the burden of establishing it has standing. Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 838 (9th Cir. 2007). At the motion to dismiss stage, the Court accepts as true the Third Party Complaint's material allegations and construes the Third Party Complaint in Summerlin Life's favor. Wilbur v. Locke, 423 F.3d 1101, 1107 (9th Cir. 2005). To establish standing, Summerlin Life must allege facts in the Third Party Complaint that, if proven, would confer standing upon it. Sacks v. Office of Foreign Assets Control, 466 F.3d 764, 771 (9th Cir. 2006).

///

The Third Party Complaint alleges that on November 5, 2004, the Sapphire Club, "by and through its agent CHSI," advised Summerlin Life to terminate Hecht's employment, effective October 1, 2004, because Hecht's employment with Sapphire Club was terminated on September 10, 2004. (Answer, Cross-Claim, & Third Party Compl. at 10.) According to Summerlin Life, CHSI provided Summerlin Life with Hecht's COBRA election form on April 1, 2005. (Id.) The Third Party Complaint alleges "[b]ecause CHSI did not provide Summerlin Life with the COBRA election form in a timely fashion in accordance with the applicable statutes and contract, and because CHSI previously provided Summerlin with notice to terminate Hecht's benefits, Summerlin promptly informed Sapphire Club that Hecht's COBRA enrollment was denied due to late submission." (Id. at 11.)

Accepting these allegations as true, and construing the Third Party Complaint in the light most favorable to Summerlin Life, Summerlin Life adequately has alleged standing at this stage of the proceedings. Summerlin Life alleges it made the decision denying Hecht's eligibility for benefits, and it therefore sufficiently has alleged it is a fiduciary to survive a motion to dismiss. The Court will deny CHSI's motion on this basis.

**C. Duty to Notify**

CHSI claims it owed no duty to notify Summerlin Life of Hecht's election to continue coverage because under the statute, only certain entities have a duty to notify. CHSI argues these entities include a group health plan, an employer, an employee or beneficiary, or the administrator. CHSI contends that because CHSI is not a group health plan, employer, employee, beneficiary, or administrator with respect to Hecht or the Plan, CHSI owed no duty to notify Summerlin Life. Summerlin Life does not dispute CHSI is not a group health plan, an employee, or a beneficiary. However, Summerlin Life contends it adequately alleged CHSI is an employer and/or administrator because the Third Party Complaint alleges CHSI was Sapphire Club's Health and Benefits Manager and acted as the

9

Sapphire Club's agent.

Under ERISA, only certain persons have a duty to provide notice of information related to the continuation of coverage under a health plan. See 29 U.S.C. § 1166. A group health plan must provide notice to covered employees and their spouses regarding certain rights upon commencement of coverage under the relevant plan. Id. § 1166(a)(1). The employer must notify the plan administrator within thirty days of a qualifying event which would result in an employee's loss of coverage. Id. § 1166(a)(2). Employees and beneficiaries are required to notify the administrator of a qualifying event within sixty days after the qualifying event. Id. § 1166(a)(3). Finally, the administrator must notify qualified beneficiaries of such beneficiaries' rights to continue coverage. Id. § 1166(a)(4).

An "employer" means "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." Id. § 1002(5). Allegations that a person acted as an employer's agent are sufficient to show the person acted indirectly in the employer's interest and consequently is an employer under § 1002(5). See Greenblatt v. Delta Plumbing & Heating Corp., 68 F.3d 561, 575 (2d Cir. 1995) (ruling a surety is not an employer and noting the complaint did not allege the surety functioned as the employer's agent or assumed the employer's functions with regard to an ERISA plan); Bleiler v. Cristwood Constr., Inc., 72 F.3d 13, 15-16 (2d Cir. 1995) (finding no employer status where contractor did not sign collective bargaining agreement and there were no allegations of ownership, agency, or assumption of functions with regard to ERISA plan); Ragan v. Tri-County Excavating, Inc., 62 F.3d 501, 512-13 (3d Cir. 1995) (holding surety is not an employer and noting surety is not the employer's agent). An administrator means–

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated;
> (ii) if an administrator is not so designated, the plan sponsor; or
> (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the

Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A). The term "plan sponsor" means–

> (I) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan.

Id. § 1002(16)(B).

The Third Party Complaint alleges the Sapphire Club is the Plan's administrator. (Answer, Cross-Claim & Third Party Compl. at 7.) The Third Party Complaint further alleges CHSI acted as the Plan's Health and Benefits Manager and was the Sapphire Club's agent. (Id. at 10.) According to Summerlin Life, CHSI acted as the Sapphire Club's agent in relation to the Plan, as evidenced by CHSI communicating to Summerlin Life regarding when to terminate Hecht from the Plan and by providing Hecht's COBRA election forms in April 2005. (Id.)

Taking these allegations as true and construing them in a light most favorable to Summerlin Life, the Third Party Complaint sufficiently alleges CHSI is an employer because it acted as the Sapphire Club's agent in relation to the Plan. Additionally, discovery will clarify whether Sapphire Club is the plan administrator, and if so, whether it delegated its authority to administer the Plan. The Court therefore will deny CHSI's motion to dismiss on this basis.

///
///
///
///
///

11

## III. CONCLUSION

IT IS THEREFORE ORDERED that Third Party Defendant CHSI of Nevada's Motion to Dismiss Third Party Complaint (Doc. #13) is hereby DENIED.

DATED: March 17, 2008

_____
PHILIP M. PRO
United States District Judge